This is the third case of the day. People v. Dana Hasselbring. Attorney Martinkus is here on behalf of the appellant and Attorney Brooks is here on behalf of the appellee. Mr. Martinkus. Good morning, Justices. May it please the Court, Counsel. My name is Jim Martinkus and I do represent the underlying defendant, the appellant, herein. The first question that I believe we need to address is jurisdiction. Do you have jurisdiction to hear this appeal? This was raised. I believe you do have jurisdiction and I want to make sure that you understand my thoughts on this. I filed an eighth motion to dismiss based upon double jeopardy. That motion differed substantively from the third motion to dismiss. That motion was based upon the trial court's denial of my seventh motion to dismiss. My seventh motion to dismiss was based upon the allegation that in this instance there was no basis to go forward because the unadulterated facts were my client had no cocaine or other drugs in his system when this event took place. That's a given fact. The only thing he had in him was seven billionths of a cocaine metabolite, benzoyl equinine, if I'm pronouncing that right. I believe clearly once the court… Counsel, I want to make sure I understand what you just said. You said the eighth motion to dismiss was based upon the denial of the seventh? Is that what you said? No. Okay, I misunderstood. It impacted how I approached the eighth. Let me explain it again. Because the seventh motion, when the court said, no, you don't need to have drugs in your system, you simply could have a metabolite. That then took out of the equation driving while under the influence. Impairment based upon the court's denial of the seventh motion had no place in this anymore. We now look at someone who is driving who had a status of having some sort of metabolite maybe 30 days earlier, up to 30 days if you're talking about THC and so forth. So what I did was follow the eighth motion because now if you're looking at was this the same act, that was the basis in large part of my motion. Now I argue to the court, clearly it's the same act because you have removed from the equation having impairment as part of the issue. The only thing is driving. And now if you're driving for purpose of having a conviction from the same operative facts, driving too fast for conditions, and if you're driving and you now have been charged with driving, aggravated driving with having a drug in your system, but the drug does not have to be in your system. For purposes of my eighth motion, what I argued to the court was now that you in fact took that out of the equation, please look at this again. Because clearly now you have the same operative act giving rise to the first conviction. Well the court must not have understood that argument because the court said that your last motion was strict. Yes, he struck it without, in my view, without really considering the nature of the argument comparing it to the third. Now I think you have two ways of having jurisdiction in this case. First, if you agree with my position that the eighth motion was substantively different, I file within 30 days. So you did ask the court to consider that as a motion to reconsider your third motion. Yes, I did. When the court wouldn't permit me to advance the argument based upon what I had presented, I did ask the court and the court denied that. But I think there's two prongs to this, John. Well, the court couldn't have said it was a motion to reconsider the third motion because it wasn't found within 30 days. Well, certainly, Judge, yes, if in fact the conclusion here is that the 30-day limit applies, then you're right. That's true. But my point and part of my argument is you have two prongs here for jurisdiction. One is if you believe the eighth motion is timely, I appeal within 30 days. But I believe that if you look at the statute, 604F requires a notice of interlocutor appeal. If you look at that section, there's nothing in that section that says the time frame in which you must appeal. The only case on point I could find is Pieper v. King. It's a Second District case, 1977. That case interpreted the language in 606 to say that the 30 days apply. I don't believe it applies. And the reason I don't is because 606B, if you read the language, it says, except as provided in 604D, the notice of appeal must be followed by the clerk of the circuit court within 30 days after the entry of the final judgment appeal. I don't see how that language could limit and describe the time frame for an interlocutory appeal. The language is clear on its face. It talks about and refers to final judgment. I believe that if we have a rule that's going to limit you to 30 days, shouldn't the rule be very clear that, in fact, it applies to both interlocutory and final judgments? Especially in light of the U.S. Supreme Court's decisions in Illinois v. Vitale and Pieper v. Abbey. In my reply brief, I quote those cases at length under the jurisdictional issue because I think it's important. Those cases say at length the importance of having someone the opportunity to, in fact, have the issue to an appellate court of whether or not double jeopardy has been violated. So, again, if you look at the message from the U.S. Supreme Court that it's a very, very important concept in English and Anglo-Jurisprudence, if you look at our statute and there's nothing that has any limitation with respect to an interlocutory appeal, if you look at those two things in concert, I think that, and I don't think this court or any other court has addressed the issue. The only court I could find that addressed the issue was Pieper v. King. So from my perspective, I believe we have jurisdiction in two ways. I think clearly we filed within 30 days. The eighth motion is substantively different. It is different because of the ruling of the court. When the court threw out this notion of intoxication or impairment, it's a very different motion. It has to do with how, then, we define driving. Is it the same driving for purposes of a single-act analysis? And I do think you have jurisdiction more broadly based upon the fact that there is no limitation in the Supreme Court rules. The inference drawn by the Second District, I argue and I believe, is wrong. I don't think there is that limitation. You also obviously have the concept that if you believe there's jurisdiction, Justice Garmon, when she wrote her opinion in a different case, clearly said that you have jurisdiction under judicial economy. Justice Garmon and Gavings, and that's again in Pieper v. Hobbs, that's in my appellate court reply brief, page 6, you have the ability, then, to consider the other issue, which is before you, and that is the issue of whether or not this statute would permit a conviction based upon a metabolite as opposed to actually having evidence of the drug being in one system at a time when this event takes place. So for those reasons, I do think that, in fact, you have jurisdiction to entertain this appeal. Turning, then, to the actual substantive arguments, I want to concentrate on one of the prongs. There's a couple of prongs to the argument as to whether or not double jeopardy attaches. One of the prongs is my weak sister, and I think that the issue of whether or not I can prove to this court or any other court that the nature of the underlying too fast for conditions is an included offense of the DUI. I think that, frankly, the state made some good arguments in its brief, and that's a harder argument for me. But I think I have an incredibly strong argument on the first prong. And again, I'm talking really about the argument starting with page 7 of my reply brief. Peeper v. Jackson, Illinois Supreme Court, 1987, clearly states, quote, while it is clear from the committee comments that section 3-3 was meant to, quote, establish an addition to the grounds of double jeopardy in this state. So you know that the Supreme Court has defined double jeopardy to include the analysis under 720 ILCS 5-3-3 and 720 ILCS 5-3-4. By the Supreme Court's pronouncement in Jackson, that is another prong for a court to consider when we look at double jeopardy purposes. And if you look at those two sections, it becomes just patently clear that this case falls squarely within it. Section 3-4b says, quote, a prosecution is barred if the defendant was formally prosecuted for a different offense. Well, in this case, he was prosecuted for a different offense. He was prosecuted for the offense of driving too fast for conditions, speeding, driving too fast for conditions. He was convicted. The state prosecuted him. This was not an ex parte judgment where he came in, pled to the ticket, and now we're arguing, oh, no, they can't now go forward with a more serious offense. No, that's not the case at all. The state's attorney's office went forward and prosecuted him on that ticket. Now, what does that put him in if you think about this? He's convicted of driving too fast for conditions. Could the court be asked by the prosecutor then, take judicial notice and we go to the jury and tell the jury, he's already been convicted of driving too fast for conditions as one of the elements that the jury should look at with respect to the driving under the influence statute? That's a very serious concern. You have a situation where he was convicted of driving too fast for conditions, and the restrictions under 3-4b continues. It says, if that former prosecution resulted in either conviction, it did, for an offense with which the defendant should have been charged on the former prosecution as provided in Section 3-3. So the conviction's there. The question becomes, should he have been charged together? Should the traffic ticket have been charged at the same time as the aggravated DUI? In order for you to get the answer to that, you have to look at Section 3-3, multiple prosecutions for the same act. When the same conduct of a defendant may establish the commission of more than one offense, which in this case it could, underlying DUI based upon their theory and the actual conviction for too fast for conditions speeding, the defendant may be prosecuted for each such offense. If the several offenses are known to the proper prosecuting officer, they must be prosecuted in a single prosecution if they are based on the same act. Well, clearly, if you look at the case law with respect to the same act, if you look at Martin, if you look at the Miller case, the Supreme Court Miller, and if you look at the Pippa v. Pena case, all these cases are set forth in my brief, Pippa v. Pena states, quote, multiple convictions for DUI and speeding could not be based on different acts of DUI and speeding during the same driving episode. They clearly find that it is the same act. Let's think about this. I mean, you're driving a vehicle. How is that a different act? If I'm driving a vehicle and I'm going to be charged for going too fast, or I'm going to be charged for causing this accident, it's the same operative fact, especially in light of the ruling of the court, in which the court said, it doesn't matter. You don't have to show intoxication. Impairments are relevant. If you have metabolite in your system that could have been 30 days ago, that's enough. So if you look at the way the court, in fact, has ruled with respect to that motion, and then lay that accordingly on this particular statute, there's no question that, in fact, double jeopardy has attached in this case. I want to make certain that the court also really understands my argument with respect to this interpretation of the statute. This is a very scary interpretation. If you permit this statute, which I think clearly, unequivocally, did not contemplate metabolites. I quoted two or three state statutes that specifically stated metabolites. Our legislature and other sections of different acts clearly has used the word metabolite. This is not a case where, in my opinion, the court can interpret this statute, which clearly does not include as a controlled substance, a metabolite. But what I really want you to think is this. If you've got kids or grandkids, and they smoke a joint, and you tell them not to do it, and they do it anyway, and 30 days later, they get into an accident, and the Supreme Court of America says, driving is the cause of causation, not impairment. We don't measure whether or not the driving was caused by impairment. We don't measure fault. If that 17- or 18-year-old kid is driving a vehicle, and somebody blows a stop sign, and there's an accident, and that person dies, if that kid has a metabolite because he smoked a joint 30 days earlier, he's eligible to be convicted under this statute. And in our county, you get 14 years. And I don't want my son or my grandkids ever to be placed in that position. I don't want yours or anybody else's, because that was not the intent of the legislature. This is a draconian interpretation. If you combine this interpretation with the Supreme Court's interpretation in Miller that says, proximate causation is just being on the road. You're driving. Was your driving a proximate cause? Yeah, I was driving the vehicle. I didn't cause the accident. I'm just driving. That's enough. So that combination of those two concepts are lethal. And it's not right, and it shouldn't be the law, and it's not the law. You have an incredible stretch by the trial court to take an interpretation of that statute to include metabolites. A metabolite is totally different. It's not a compound. It's an extraction. You're breaking something down. It's the byproduct. It's the exact opposite of an additive. It's not a compound of two different drugs. It's a derivative. You are seeing the evidence of the process, the metabolic process. If the legislator had intended to make metabolites part of the equation, they would have done so. And I would submit to the court that had that been the case, the Supreme Court in Martin would have never ruled the way it did. It ruled the way it did because it said, you know what? If you're impaired, if you have some evidence of intoxication, some evidence of drug in your system, too bad. We're not going to sit around and guess if it affected you. Okay, I can live with that. But the whole idea here is it's supposed to be you're impaired in some fashion. And we're not going to guess. We're not going to put the public at risk because we can't figure out what does it mean to have a little impairment or not. That's what Martin's all about. Martin never stood for the proposition that some kid can be charged and convicted because he has a metabolite of a process that his body produced 30 days earlier, and it just happens to be in a situation where he's involved in an accident. That's never been the interpretation. That shouldn't be in the interpretation. That's a scary interpretation. And for all these reasons, and I apologize if I feel strong in this, I really feel strong in this one. So I apologize maybe for being too strong here. But please look at this. This is a very important decision. Thank you. Thank you, Mr. Martinkus. Ms. Brooks? Excuse me. May it please the court and counsel. My name is Anastasia Brooks, and I represent the people in this case. And the threshold issue is jurisdiction, and the defendant relies only on Rule 604F, which allows the defendant to appeal a, quote, denial of a motion to dismiss a criminal proceeding on grounds of formal jeopardy. And in here, it's not disputed that the motion was stricken, not denied. Now, one question could be, is the striking of a motion the same as a denial? And I don't see the defendant really making that claim, but that is a possible resolution of this issue. When something is stricken, it's not considered on the merits. And the trial court was very clear in this case that because the motion was duplicative, it was not being considered or denied on the merits. So therefore, there is no appealable ruling. So what the defendant should have done is appealed the denial of the third motion, a motion which was denied, and would have been appealable under 604F. However, like the King case says, is you have to elect, essentially, whether you want to appeal this issue on an interlocutory basis or after final judgment. And of course, the law is that if you don't appeal it on an interlocutory basis, it's not forfeited. So the defendant is not being really prejudiced here in the sense that he's losing a double jeopardy issue if this court dismisses his appeal. It's just that he must wait until after final judgment to appeal. So in that sense, it may be somewhat prejudicial in a certain sense, but he's not going to lose the merits of his issue on jurisdictional grounds. Now, the defendant cites no authority other than what he relies on the first sentence of the text of Rule 606B to say that the 30-day limitation on appeals applies only to final judgments. However, the state cites the penultimate sentence, which says, no appeal may be taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment from which the appeal was taken. So the text of Rule 606B actually applies to more than just final judgments. Now, that sentence became quite an issue in the Marker case, which I laid on a different part of Marker in my brief. But Marker does contain an explanation as to what happened in 1977 when they changed the order or judgment language to final judgment in the first sentence of Rule 606B. And they said in Marker that the last sentence, the one I quoted, does not take away the tolling rule. So that's what Marker was about. But Marker was an interlocutory appeal, and you don't need tolling if there's no 30-day limit. So essentially, Marker implicitly does implicitly recognize that 30 days limits on appeals, subject to tolling, of course, for a timely motion reconsider, that 30-day limit does apply to interlocutory appeals. So this court should reject the defendant's claim that his appeal would be timely without respect to the 30-day limit. Now, the defendant also relies on this Gavings and Hobbs issue of whether a court, appellate court, can assume jurisdiction in the basis of its own view of efficiency. And the rule cited in that case has now become part of Rule 306, which is a civil rule that does not apply in criminal cases. And the policy there, as the rule explains, is when a leave to appeal is granted on an interlocutory basis from an order granting a new trial, the whole case is placed before the appellate court. Well, this is not the same situation. When there's an interlocutory appeal in a criminal case, the whole case is not being placed before the appellate court. And this court should instead file the better reasoned decisions of Rothman and Griffith, the ones that I've cited in my brief, as being better reasoned because the only thing a defendant should be able to appeal under 604F is the denial of the former jeopardy issue and not anything else. And in any event, his efficiency argument does not excuse compliance with the timing rules because the seventh motion to dismiss, which contains the interpretation of the DUI statute, his second issue, that denial happened on May 7th, 2012. And his notice of appeal was not filed until July 6th, which is more than 30 days later. So essentially, his notice of appeal is not timely with respect to the order identified in the notice of appeal that he seeks to appeal as well, which is the denial of the seventh motion to dismiss. And with respect to his argument that the eighth motion to dismiss differed substantively, he's relying on the effect of the denial of the seventh motion to dismiss. And the seventh motion to dismiss did not remove impairment as an element of the crime, essentially. That was the law anyway. The trial court did not change the law by telling the defendant through its denial of the seventh motion to dismiss. So the defendant really could have raised the same arguments in the eighth motion to dismiss and the third motion to dismiss. So there really was no need to file a new motion except perhaps to restart, attempt to restart the time for taking an interlocutory appeal. So because he only has two options, to either appeal timely under King or wait until final judgment, there is no third option that's recognized by law. And so he should not be permitted to appeal now. And the appeal should be dismissed in its entirety. I'll move on to the merits of the issue. Double jeopardy relies on Quigley and mandatory joinder. Quigley was a case in which the compared crimes were misdemeanor DUI and aggravated DUI. Cases which clearly involve the same act. Now, this is not the same act because, well, first of all I want to clarify something. The defendant cites his other crime underlying the traffic ticket as speeding and too fast for conditions. Well, actually I think it was the fail to reduce speed to avoid colliding with any person or vehicle on or entering the highway. That's a different crime than speeding or driving from too fast for conditions. So if we at least frame the proper argument of the elements for purposes of a block burger analysis, we need to get the statutes right. So the defense argument is because the aggravated DUI requires, the defense argument as I see it at least, is because aggravated DUI requires an element of proximate cause, therefore it should be considered a statutory element that he failed to reduce speed to avoid colliding with any person or vehicle on or entering the highway. Well, that's not going to happen in every DUI case. And the state's brief cited examples where the defendant perhaps either, his proximate cause was either driving too slow or stopping or stopping too quickly or standing on the highway. Or he might have collided with something that did not involve a person or vehicle on or entering a highway. In fact, aggravated DUI doesn't even require you to be on a highway. So there's just a complete difference in the elements. And the only thing essentially is that you have to be driving a vehicle in both crimes. But multiple elements doesn't mean that an act that compared crimes thereby involve the same elements. If there's some overlap, it doesn't mean that they're in fact the same offense for block burger purposes. So because aggravated DUI does not include an element of failing to reduce speed to avoid colliding with any person or vehicle on or entering a highway, it's not the same offense for block burger purposes. I'd also like to point out that the defendant correctly knows that Jackson's opinion is being relevant. Jackson's holding was compulsory jointer in sections 3.3 and 3.4, does not apply to offenses charged by uniform citation in complaint form. And the defendant does not appear to dispute that he was in fact charged by uniform citation in complaint form. And he mentions that this was not ex parte. I looked up the docket entries for his traffic case, and it seemed like it was ex parte. There's very little information as to what actually happened there. It was not a guilty plea apparently, but if he didn't appear on his court date, for example, and the judge entered an ex parte judgment, that was a possibility for what actually happened. But at least the record is not clear as to what happened before in the traffic case. So he does not show that this case should be taken outside of the ambit of Jackson and show that compulsory jointer principles and statutory principles should apply. And so therefore he should be essentially held to the constitutional double jeopardy test, which is the Blockberger test. The defendant also relies on the Steffen case and mentions several times in his reply brief the word same conduct. Well, same conduct refers to Grady v. Corbin, and Grady v. Corbin is something that happened for a while until it was disavowed by the U.S. Supreme Court. And the Illinois Supreme Court in Senkiewicz explicitly rejected the Corbin test and readopted the Blockberger same elements test for double jeopardy purposes. So to clarify this analysis, any references to same conduct should be disregarded because that gets back to this Grady v. Corbin test, which is no longer applicable. So to keep the analysis consistent, it should refer only to same elements. And as I said, these elements are not the same because there is an element of the traffic offense which is not required for the aggravated DUI. Therefore, they're not lesser included crimes for purposes of Blockberger and double jeopardy. With respect to the seventh motion dismissed, the trial court correctly essentially declined to make what it deemed to be a pretrial assessment of the sufficiency of the evidence. The defendant tries to rely on what was tendered in discovery. Well, there's not been a trial yet, so the defendant can't say, well, the state can't prove its case because the state hasn't had an opportunity to prove its case. In any event, though, the intent behind the language, and this is Section 11-501A6, which is the drug DUI statute, the words are resulting from. So that's what I emphasize. So if there is the drug or substance or compound resulting from the unlawful consumption of controlled substance, that qualifies. Well, the legislature didn't say that you had to have a controlled substance in your breath, blood, or urine. It said you had to have a drug, substance, or compound resulting from the consumption of controlled substance. So although the word metabolite was not used specifically, and the defense basically, his major argument is, well, the legislature could have said metabolite. Well, the state's counter is, well, the legislature could have said controlled substance had to be in the blood, breath, or urine, but it didn't. It used these other words. And, essentially, the benzoyl-ecognine is a metabolite of cocaine. That fact is not disputed here. So, therefore, it resulted from the consumption of cocaine. So, therefore, it should qualify whether or not it itself is a controlled substance. But the state goes further and attempts to establish that benzoyl-ecognine is, in fact, a derivative of ecognine and is also, therefore, a Schedule II controlled substance, like the drug Esteron is. And that's for federal DEA purposes, and the state recognizes that distinction, but there really is no distinction because Illinois statutory definition of Schedule II controlled substance in Section 206b-4 of the Controlled Substance Act shows that because this is also a derivative of cocaine, it also would qualify under the Illinois definition of Schedule II controlled substance. So it just happens to be a metabolite of cocaine and also a Section II controlled substance. So even if the defendant's argument would be adopted that there has to be a controlled substance in the blood, breath, or urine, then this particular substance would qualify. And it is a compound or a drug or a substance. So it fits that statutory definition. So there is no basis for this Court to reverse the denial of the motion to dismiss on that ground. So that's the state's primary argument. I would entertain any questions you might have. Thanks, Ms. Brooks. Thank you. I'm going to request this Court to either dismiss the appeal or refer him. Thank you. Mr. Martinkus, any rebuttal? Yes. I want to first just address Martin because I think Martin belies what the State just argued. Martin states, quote, Although the evidence did not establish exactly when the defendant last used methamphetamine, a rational jury could have found that his last use was sufficiently recent that some, quote, remnants of the drug remained in his urine on the night of the accident. That was the whole issue. That's what they argued. The defense argued that there's such a minute one-millionth or something of the drug itself in his urine, it's almost not detectable, therefore you shouldn't be able to convict him of this. The Supreme Court totally rejected that and said as long as you have some remnants of the drug. They never said some remnants of the metabolite. And if you continue with Martin and you look at, in fact, the Senate statement, Senator Barkhausen, they're consistent. This is from Martin. There's no dispute that the statute is intended to keep drug-impaired drivers off the road. I mean, think of it logically. If, in fact, we're saying we don't know how to measure drugs, we don't have people who are impaired with some amount of drug-assisted driving. That's what we want the public to be safe. Why would we then include people who might have ingested a drug up to 30 days earlier? I mean, there's no impairment issue there. Those people are no more impaired or inclined to create an accident than any of us. And I think it's the Utah statute that specifically excluded. They permitted metabolites, but they specifically excluded, for example, THC, the metabolite for marijuana. There they realized that there was no connection. In this particular case here, we have benzoeconine, which is a cocaine metabolite. We have seven billionths of the metabolite, which means that the slightest remnant out of use, out of having the drug in the system, the slightest remnant of the metabolite was present. So I want to make certain I'll point that out. I also want to tell you that the motion of memorandum, which I filed in support of the eighth motion, clearly argued the following. Considering the court's ruling in denying the defendant's seventh motion to dismiss, it becomes more apparent that the underlying act of driving a vehicle and failing to reduce speed to avoid an accident is the same operative act, considering that the court ruled that neither impairment nor evidence of a controlled substance in the defendant's system was necessary, to the extent that counsel argues, oh, well, you could have argued impairment before. Well, it's not just impairment. Once the court denied the seventh motion, the court opened up a whole new category of potential defendants, those who weren't impaired, but those who happened to have a status of having consumed and metabolized a drug at a much earlier point. So I think clearly there's a big difference. I don't believe that a metabolite is a compound. When you have a compound, you're adding one and two drugs together or more to have some sort of cocktail. A metabolite is just the opposite. It reduces. It, in fact, takes away. It shows what takes effect once you process the drug itself. In terms of some of the other arguments, I don't believe that, in fact, the issue of Blockberger applies only because I think I told you from the very beginning, she's probably right on that, to be honest with you. I think when I looked at her brief and then I looked at my argument with respect to the issue of whether or not this was a lesser-included offense, if you do take the test she cites, she's probably right. But I don't think she's right at all because that's what Jackson says. It has multiple prongs. It says specifically, forget about Blockberger in that analysis because that analysis has to do with whether or not it's an included offense. If you look at the two statutes with respect to mandatory joinder, the facts in this case fit perfectly. It's exactly what it is. So I do think you have jurisdiction. I do ask that you please consider my arguments. I think it's an important decision. Thank you. Thank you, counsel. The court will take this matter under advisement and be in recess until 1 o'clock.